UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARREL STEWART,

Plaintiff,

v.

HENRY RICHARDS, *et al.,*

Defendants.

Case No. C08-5275 RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:
October 17, 2008**

Before the Court is the motion for summary judgment of Defendants Henry Richards and Diana Crawford (Dkt. # 15). Defendants' motion is supported with the Declaration of Cathi D. Harris and attached exhibits.[1] Plaintiff filed his opposition and declaration in support. (Dkts. # 18 and 19). Defendants filed their reply and the Declaration of John Rockwell. (Dkt. # 22; Dkt. # 22-2)[2].

After careful review of the motions, supporting declarations and documents, and viewing the facts in the light most favorable to the Plaintiff, the undersigned finds that Defendants' motion should be granted and Plaintiff's complaint dismissed with prejudice.

## I. SUMMARY OF CLAIMS AND RELIEF REQUESTED

Plaintiff Darrel Stewart is 63 years old and is a civilly committed sexually violent predator. (Dkt. # 16-4, ¶¶ 3, 6; pp. 1-2). He resides at the Special Commitment Center (SCC), a Washington

---

[1] For ease of reference, citations are to CM-ECF pagination. Defendants' exhibits may be found at Dkt. # 62-2, pp. 1-5; Dkt. # 16-3, pp. 1-33; Dkt. # 16-4, pp. 1-2; Dkt. # 16-5, pp. 1-7.

[2] By separate motion, Defendants requested a stay of discovery pending resolution of their motion for summary judgment. (Dkt. # 17). By separate order, this Court granted that motion.

REPORT AND RECOMMENDATION - 1

Department of Social and Health Services (DSHS) facility for the care and treatment of sexually violent predators pursuant to Wash. Rev. Code ch. 71.09, Washington's sexually violent predator statute. *Id*., ¶ 5. Mr. Stewart declines to participate in sex offender specific treatment at SCC. *Id*., ¶6.

In this 42 U.S.C. § 1983 action, Mr. Stewart alleges that Defendants violated his First Amendment rights when Mr. Stewart's treatment team denied his request to purchase certain books containing "youthful characters" and "juvenile themes" by someone with his criminal history. (Dkt. # 1, p. 3). Mr. Stewart seeks a declaratory judgment that SCC Policy 208IX(C)[3] is unconstitutionally vague on its face and/or as applied to himself and the residents of SCC, and also requests punitive damages.

Defendants request dismissal of Mr. Stewart's claims based on this Court's previous holding in *Spicer v. Richards*, C07-5109FDB/KLS. In that case, the court held that no constitutional right exists within a total confinement facility for sexually violent predators to possess counter-therapeutic media.[4]

## II. FACTS

**A.  Plaintiff's History of Sexually Violent Offenses**

Plaintiff does not dispute that he was committed to SCC as a sexually violent predator after a jury trial, pursuant to Wash. Rev. Code ch. 71.09. (Dkt. # 18, p. 2). A complete recount of Mr.

---

[3] Mr. Stewart's reference to paragraph IX(C) is in error. The paragraph containing the allegedly unconstitutionally vague language of which he complains is contained in paragraph VII(C) of SCC Policy 208. (Compare Dkt. # 2, p. 10, in which Plaintiff references the language of paragraph VII(C) and Dkt. # 16-5, p. 4 - Policy 208, Effective March 18, 1992, Re-issued June 12, 2007).

[4] *See* Report & Recommendation for entry of partial summary judgment in Case No. C07-5109FDB/KLS (Dkt. # 24) and Order Adopting R&R (Dkt. # 27).

REPORT AND RECOMMENDATION - 2

Stewart's history of sexually violent offenses are detailed in Defendants' motion and will not be repeated here. (Dkt. # 15, pp. 2-4). Mr. Stewart does not dispute that he has a history of sexually violent and motivated crimes. (Dkt. # 18, p. 2). He disputes only that he was convicted of a 1972 arrest for sexually assaulting a young lady in a theater in Nebraska. *Id*.

Mr. Stewart declines to participate in the sex offender treatment at the SCC. (Dkt. # 18, p. 1).

**B.     Reading Materials and Visual Media**

To maintain a treatment oriented environment, the SCC limits residents' access to certain media. (Dkt. # 16; 16-5, pp. 1-7 (SCC Policy No. 208, Sexually Explicit and Related Material)). Pursuant to Paragraph VII(C), governing "Books, Posters and Other Material," if the content of a "book, piece of graphic art, or other item is determined to be linked to the resident's criminal history, the item shall be prohibited to the resident."

The specific media a particular resident may not possess is based on his treatment team's professional judgment of the negative effect of such media on the specific resident and his sexually violent offense history. For example, a resident with a history of offending against children may not be allowed to possess media with juvenile themes characteristic or representative of the resident's victim range/profile(s). *Id*., p.2, § I (B). A resident with a history of violent rape against women may not be allowed to possess sexually explicit depictions of women or depictions of sexual violence. *Id*.

Mr. Stewart's forensic therapist (FT) reviews reading materials and visual media he wishes to possess at the SCC to determine whether, in the exercise of her professional judgment, the materials are appropriate for Mr. Stewart to possess. (Dkt. # 16, p. 2, ¶ 7). If the FT determines the materials are inappropriate, Mr. Stewart's treatment team then reviews the FT's determination. On

REPORT AND RECOMMENDATION - 3

the basis of the team members' collective professional judgment, they either approve or disapprove the FT's decision. *Id*. In this case, Mr. Stewart's treatment team has declined to authorize him to possess certain media with juvenile themes and law enforcement crime solving techniques and psychology in view of his extensive history of sexual offenses, including offending against 6- and 13-year-old girls. *Id*.

Members of a treatment team include Forensic Therapists (FT), a Forensic Therapist Supervisor, Psychology Associates, as well as Residential Rehabilitation Counselors (RRCs), and RRC Supervisors, a Program Area Manager and Residential Area Manager. The FTs, FT Supervisor, and Psychology Associates all have educations at the Bachelor's level or above, with the majority having Master's Degrees in psychology or a similar field. (Dkt. # 22, p. 2). Defendant Crawford's training and education for the FT position include an Associates Degree in Arts and Science, a B.A. in Criminal Justice, and an M.A. in Psychology. *Id*. She has worked with the mental health population within a correctional setting for approximately six years. *Id*. As a requirement for her Master's degree, Ms. Crawford completed a practicum of 160 hours working with veterans. This background is consistent with the education, training and skills expected of a forensic therapist who is tasked with exercising professional judgment within the SCC program. *Id*., p. 2-3.

Mr. Stewart was denied access to three books, <u>The Bartimaeus Triology</u>, <u>Escape from Earth</u> and <u>Alien Crimes</u>. (Dkt. # 2, p. 6). Mr. Stewart's FT and treatment team concluded that these books were inappropriate for Mr. Stewart to possess based on his diagnoses and sexually violent offense history. (Dkt. # 16, pp. 3-4; Dkt. # 22, p. 2). The team concluded that the first two books were inappropriate because they were written for "young adults," i.e., youths with a reading level of ages 9-12 and the youth of the characters and juvenile themes. *Id*. The third book was found to be

REPORT AND RECOMMENDATION - 4

inappropriate as it focused on the tools and psychology of law enforcement "police procedurals" which can be used by residents to avoid consequences for antisocial behavior. *Id*.

### III. STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id*.

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### IV. DISCUSSION

In the civil commitment setting, a patient's liberty interests are balanced against the relevant

REPORT AND RECOMMENDATION - 5

state interests to determine whether the state has violated the patient's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 318 (1982). The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility. See also, *Hydrick v. Hunter*, 500 F.3d 978, 990 (9th Cir. 2007) (citing *Youngberg*, 457 U.S. at 319-22):

> In weighing those interests, it cannot be ignored that, unlike the plaintiff in *Youngberg*, who was civilly committed because of mental infirmities, SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others. Therefore, the rights of SVPs may not necessary be coextensive with those of all other civilly detained persons.

*Hydrick*, 500 F.3d at 990.

Challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. *Pell v. Procunier*, 417 U.S. 817 (1974). Similarly, First Amendment challenges of SCC policies must be analyzed in terms of the legitimate polices and goals of SCC's treatment program. Decisions made by professionals are presumptively valid; liability may only be imposed when the decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Id.*, p. 323. The Constitutional requires only that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Youngberg*, 457 U.S. at 321. Mere disagreement without expert testimony to show that defendants did not exercise professional judgment at all is insufficient to avoid summary judgment dismissal. *Id.* at 322-23.

The undisputed evidence reflects that the SCC is a total confinement treatment facility designed for persons whom a state court has committed or found probable cause to detain as

REPORT AND RECOMMENDATION - 6

sexually violent predators under section 71.09.020(13). "(I)t is irrefutable that the State has a compelling interest both in treating sex predators and protecting society from their actions." *In re Young,* 122 Wash.2d 1, 26, 857 P.2d 989, 1000 (1993). "The treatment needs of (the SVP) population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act." See WASH.REV. CODE 71.09.010.

Defendants argue that no constitutional right exists to possess therapeutically inappropriate media within a total confinement treatment facility for persons detained or committed as sexually violent predators. (Dkt. # 15, p. 6). Absent a constitutional right, Mr. Stewart's claim fails as a matter of law. *Id* Plaintiff argues, however, that Defendants acted arbitrarily and capriciously in exercising their professional judgment when they rejected his request for the books (Dkt. # 18, p. 3) and that books and "youthful characters" and "juvenile themes" are available through SCC's library and televisions located in residents' units. (*Id*., p. 4). Mr. Stewart also argues that there is no evidence linking the books with criminal behavior. (*Id*., pp. 4-5). He argues that if Defendants are allowed to ban printed items based on the characters and/or themes within the stories, they should have to prove beyond a reasonable doubt with direct evidence that this type of printed material had caused residents to commit crimes in the past and that they would cause him to act out in a criminal manner in the future. *Id*.; *See also*, Dkt. # 2, pp. 14-15. Mr. Stewart also argues that there is no evidence that Defendant Crawford is a qualified member of the treatment team. *Id*., p. 6.

This Court has previously held that no constitutional right exists for sexually violent predators to possess counter-therapeutic media within a total confinement treatment facility. *See Spicer v. Richards*, C07-5109 FDB/KLS, Dkt. # 48. In that case, the plaintiff alleged that his freedom of speech was violated because his treatment team was restricted his access to books,

REPORT AND RECOMMENDATION - 7

magazines and movies, even though he was not in treatment. (*See* Dkt. # 6, ¶ 8 therein). The plaintiff in that case also argued that different standards should apply to persons who are not in treatment and that Policy 208 cannot be applied equally to the written materials received by SCC residents and DVD movies or television shows that residents may view. *Id.* Mr. Stewart argues that because he is not in treatment, his claim should be treated differently under the First Amendment. (Dkt. # 18, p. 3). He also argues that SCC's Policy 208 cannot be applied equally to materials with inappropriate themes that SCC residents may receive, obtain at the library or view on the televisions in their units. (Dkt. # 18, p. 4).

The Court previously rejected the argument that similar materials may be elsewhere obtained, stating that "this does not lead to the conclusion that the policy is not rationally related to the state's legitimate interest in maintaining institutional security and a therapeutic treatment environment." (Dkt. # 24, p. 12; *See also*, Dkt. # 27 (Order Adopting R&R) in Case No. 7-5109FDB/KLS). There, as in this case, the state's interest in providing comprehensive treatment to sexually violent predators outweighs Plaintiff's interest in viewing counter-therapeutic material which could interfere with the state-mandated treatment program or which could ultimately endanger the public, SCC residents and staff. Thus, it matters not whether Plaintiff is personally involved in treatment.

Mr. Stewart also objects to the qualifications of his treatment team. In particular, Mr. Stewart argues that Defendant Crawford did not exercise her objective, professional judgment and that Defendants have failed to provide any proof that she had the "professional, educational expertise, training, and experience to make mental health professional judgments." (Dkt. # 18, p. 6).

According to the SCC Forensic Therapist Supervisor, however, Defendant Crawford possesses the requisite education, training and experience to perform the tasks of the position she holds at the

REPORT AND RECOMMENDATION - 8

SCC. (Dkt. # 22, pp. 2-3).

Viewing all the evidence in the light most favorable to Mr. Stewart, the undersigned concludes that there is no issue of fact regarding Mr. Stewart's claim that enforcement of SCC's Policy 208 violates his First Amendment rights. Mr. Stewart has failed to show that SCC's Policy 208 is not rationally related to SCC's legitimate interest in maintaining institutional security and a therapeutic treatment environment. Although Mr. Stewart clearly disagrees with the conclusions reached by his therapeutic team, mere disagreement alone is insufficient to avoid summary judgment dismissal.

## V.  CONCLUSION

For the reasons stated above the Court should **GRANT** Defendants' motion for summary judgment (Dkt. # 15). A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on **October 17, 2008**, as noted in the caption.

DATED this  25th  day of September, 2008.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9